Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★  ★ ★ ★

# OPINION

No. 04-09-00560-CV

William S. **HAUSSER**, Albert F. Hausser, Robert Hausser Jr., Eugene L. Ames Jr., Lawrence J. Flume Jr., Corwin D. Denney Foundation, and Des Cygne Denney Settlement Partners, Ltd., Appellants

v.

Fernando D. **CUELLAR** and Jacob F. Rathmell Jr., Successor Co-Trustees under the Wills of Fernando Cuellar and Inocente T. De Cuellar, and Trustees under Trust Deeds executed by Fernando Cuellar and Inocente T. De Cuellar, Appellees

From the 49th Judicial District Court, Zapata County, Texas
Trial Court No. 6803
Honorable Jose A. Lopez, Judge Presiding

### OPINION ON MOTIONS FOR REHEARING EN BANC

Opinion by:      Marialyn Barnard, Justice
Dissenting opinion by:  Sandee Bryan Marion, Justice, joined by Steven C. Hilbig, Justice

Sitting en banc:  Catherine Stone, Chief Justice
                  Karen Angelini, Justice
                  Sandee Bryan Marion, Justice
                  Phylis J. Speedlin, Justice
                  Rebecca Simmons, Justice
                  Steve C. Hilbig, Justice
                  Marialyn Barnard, Justice

Delivered and Filed:  February 2, 2011

REVERSED AND RENDERED IN PART, REVERSED AND REMANDED IN PART; APPELLEES' MOTION FOR REHEARING DENIED; AMICUS CURIAE'S MOTION FOR REHEARING DENIED

This is an appeal from a trial court's order granting summary judgment in favor of appellees, Fernando D. Cuellar and Jacob G. Rathmell Jr., successor co-trustees under the wills of Fernando Cuellar and Inocente T. De Cuellar, deceased, and trustees under trust deeds executed by Fernando Cuellar and Inocente T. De Cuellar ("Cuellar and Rathmell"). The dispute involves the interpretation of a deed. Both parties filed motions for summary judgment, seeking a declaration of the rights of the parties as provided by the deed. The trial court granted summary judgment in favor of Cuellar and Rathmell and awarded them attorney's fees. We reversed the trial court's judgment, rendered judgment that the deed conveyed an undivided one-half royalty interest to the appellants, William S. Hausser, Albert F. Hausser, Robert Hausser Jr., Eugene L. Ames Jr., Lawrence J. Flume Jr., Corwin D. Denney Foundation and Des Cygne Denney Settlement Partners, Ltd. ("the Haussers") in the Paloma lease, including in all future leases, and remanded the issue of attorney's fees to the trial court for reconsideration of whether and to whom attorney's fees should be awarded and what amount, if any, is appropriate. Motions for rehearing were filed by an amicus curiae and appellees Cuellar and Rathmell. We deny the motions for rehearing, but withdraw our July 21, 2010 opinion and judgment and issue this opinion and judgment in its place.

## FACTUAL BACKGROUND

This case involves a dispute regarding the interpretation of a deed. Specifically, the parties disagree on the amount of royalty interest conveyed in the deed. In March of 1936 under a deed known as the Original Escamilla Deed ("the Escamilla deed"), grantors Reyes and Margarita Garza de Escamilla conveyed their royalty interest in oil, gas, and other minerals in a 256.6 acre tract in Zapata County to grantees, Nathan Rosenberg, Bob Rose, Mary Ley, and J.W. Edwards. The granting clause of the Escamilla deed conveyed an undivided one-half (1/2)

interest in all the oil, gas, and minerals produced. At the time of execution, the Escamilla deed was subject to a pre-existing 1936 lease which provided and reserved to the lessors a one-eighth (1/8) royalty interest. As a result of this lease, the grantees of the Escamilla deed were paid a one-sixteenth (1/16) royalty interest (derived by multiplying the one-half interest specified in the granting clause of the Escamilla deed by the one-eighth royalty reserved in the 1936 lease). It is undisputed that the pre-existing 1936 lease is now terminated.

The Haussers are successors in interest to the grantees of the Escamilla deed; Cuellar and Rathmell are successors in interest to the grantors.

In November of 2006, Cuellar and Rathmell executed a new oil, gas, and mineral lease ("the Paloma Lease") covering the 256.6 acre tract with Paloma Partners I, L.L.C. ("Paloma Partners"). The Paloma Lease provided and reserved to the lessors a royalty interest of twenty-five percent (1/4). Thereafter, Paloma Partners initiated drilling operations, and following the commencement of production, began to account to the Haussers for their royalty interest as set forth in the Escamilla deed. Paloma Partners initially accounted to the Haussers for one-half of the twenty-five percent (1/2 times 1/4), in other words one-eighth, royalty interest pursuant to the granting clause of the Escamilla deed. Subsequently, Paloma Partners reduced the royalty payments paid to the Haussers to a one-sixteenth interest in all the oil, gas, and minerals derived from the Paloma Lease based on the future lease clause of the Escamilla deed.

The Haussers filed a suit for declaratory judgment, requesting the trial court to declare their ownership interest under the Escamilla deed as an undivided one-half of the royalty reserved by the Paloma Lease. Thereafter, both parties filed motions for summary judgment requesting the trial court to declare the royalty interests of the parties as provided by the Escamilla deed. Specifically, the Haussers argued that under the Escamilla deed's granting

clause, the Escamilla deed conveyed to them an undivided one-half interest in any of the oil, gas, and mineral royalty derived from the Paloma Lease and all future leases. Cuellar and Rathmell countered that under the future lease clause, the Escamilla deed granted the Haussers only a one-sixteenth fixed royalty interest in oil, gas, and minerals derived from the Paloma Lease as well as all future leases.

The trial court entered final summary judgment in favor of Cuellar and Rathmell and against the Haussers, declaring the Escamilla deed "conveyed an undivided one-sixteenth (1/16th) royalty in the oil, gas and other minerals as to all future lease or leases executed after the lease in effect on April 17, 1936 terminated, and not an undivided one-half (1/2) interest as alleged by Plaintiffs." The trial court further declared that under the current oil and gas lease, the Haussers were entitled "to only an undivided one-sixteenth (1/16th) of all of the oil, gas and other minerals produced from the property." Lastly, the trial court awarded attorney's fees to Cuellar and Rathmell.

## STANDARD OF REVIEW

We review a trial court's ruling on a summary judgment motion de novo. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Where, as here, both parties file motions for summary judgment, and the trial court grants one motion and denies the other, we review all issues presented and enter the judgment the trial court should have entered. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Moon Royalty, LLC v. Boldrick Partners*, 244 S.W.3d 391, 393 (Tex. App.—Eastland 2007, no pet.). This court "must consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law." *Moon*

*Royalty*, 244 S.W.3d at 393-94 (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546 (Tex.1985)).

## DISCUSSION

### *Construction of Deed*

In their first issue, the Haussers contend the trial court erred in granting summary judgment in favor of Cuellar and Rathmell. The Haussers contend the trial court misconstrued the language in the Escamilla deed by concluding the Haussers' ownership interest amounted to only an undivided one-sixteenth fractional royalty interest in the oil, gas, and minerals derived from the Paloma Lease and all future leases. The Haussers contend that based on the four corners of the Escamilla deed, the intent of the parties was to grant the grantees an undivided one-half interest in any of the oil, gas, and mineral royalty derived from a lease as specified by the granting clause. According to the Haussers, in accordance with the Escamilla deed and Paloma Lease, royalty payments should be calculated by multiplying the one-half interest specified in the granting clause of the Escamilla deed by the twenty-five percent royalty reserved in the Paloma Lease. As part of their argument, the Haussers contend each of the clauses in the Escamilla deed can be read harmoniously and consistently with one another only if the granting clause governs the amount of royalty reserved to the grantees. The Haussers argue any other interpretation would render the granting clause meaningless.

In construing the meaning of a deed, our primary duty is to ascertain the intent of the parties as provided in the four corners of the document. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). To do this, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the agreement, even if different parts of the deed appear inconsistent or contradictory. *Id.* at 462; *Coker v. Coker*, 650 S.W.2d 391, 393

(Tex. 1983). We must assume the parties to the instrument intended every clause to have some effect; therefore, the language of the deed should be interpreted so that no provision is rendered meaningless. *See Luckel*, 819 S.W.2d at 461; *Coker*, 650 S.W.2d at 393. Each word and phrase should be given its plain, grammatical meaning unless doing so would clearly defeat the parties' intent. *Moon Royalty*, 244 S.W.3d at 394. No provision of the deed should be struck unless an irreconcilable conflict exists which causes one part of the deed to destroy another part. *Id.*

A deed may be either ambiguous or unambiguous, and this determination is a question of law. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996). To make this determination, the trial court must examine the deed as a whole in light of the circumstances present at the time of its execution. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996); *Derwen Resources, LLC v. Carrizo Oil & Gas, Inc.*, No. 09-07-00597-CV, 2008 WL 6141597, at *4 (Tex. App.—Beaumont May 21, 2009, no pet.) (mem. op.); *Savage v. Doyle*, 153 S.W.3d 231, 234 (Tex. App.—Beaumont 2004, no pet.). If after applying the pertinent rules of construction, a deed is subject to two or more reasonable interpretations, then the deed is ambiguous, and a fact issue exists as to the parties' intent. *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589; *Derwen Resources*, 2008 WL 6141597, at *4. However, an ambiguity does not arise merely because the parties advance conflicting interpretations of the deed's language; instead, for an ambiguity to exist, both interpretations must be reasonable. *Id.*

A deed is unambiguous when it is so worded that it can be given "a certain or definite legal meaning or interpretation." *Coker*, 650 S.W.2d at 393. The interpretation of an unambiguous deed is a question of law, and we conduct a de novo review of the trial court's construction. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986); *Range Resources Corp., v.*

*Bradshaw*, 266 S.W.3d 490, 493 (Tex. App—Fort Worth 2008, pet. denied). When conducting a de novo review, we exercise our own judgment and redetermine each issue according no deference to the trial court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998); *Range Resources Corp.*, 266 S.W.3d at 493.

Here, neither party contends the Escamilla deed is ambiguous; in fact, both parties agree the Escamilla deed is unambiguous, yet they advance conflicting interpretations of the conveyance language. *See Columbia Gas Transmission Corp.*, 940 S.W.2d at 589 ("An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract."). After reviewing the Escamilla deed and applying the rules of statutory construction, we agree the Escamilla deed is unambiguous.

The sole issue in this appeal is one of deed interpretation. Here, the royalty reservation language is mentioned in the following three clauses in the Escamilla deed: the royalty clause, the existing lease clause, and the future lease clause. Specifically, the granting clause states:

> [Grantors] have GRANTED, SOLD, CONVEYED, ASSIGNED AND DELIVERED, and by these presents do GRANT, SELL, ASSIGN, CONVEY AND DELIVER unto the said Grantees, Share and share alike, an undivided (1/2) interest in and to all of the oil royalty, gas royalty, royalty in casinghead gas and gasoline, and royalty in other minerals in and under, and that may be produced and mined from the following described land situated in the County of Zapata and State of Texas, to wit:
>
> . . .
>
> [description of land]
>
> . . .
>
> Together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom. This grant shall run, and the rights, titles and privileges hereby granted shall extend to Grantees herein, and to Grantees heirs, administrators, executors and assigns, Forever.

The existing lease clause states:

> The above described land is now under an oil and gas lease executed in favor of [grantees], and it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-half (1/2) of all the oil royalty, gas royalty, royalty in casinghead gas and gasoline, and royalty from other minerals or products due and to be paid under the terms of said lease.

Lastly, the future lease clause provides:

> In the event a future lease or leases are executed covering the above described property, or any party thereof, upon the termination, forfeiture or lapse of the hereinabove described lease, then the Grantees shall receive under such future lease or leases one-sixteenth (1/16) part of all oil, gas and other minerals taken and saved from the above described property, under such lease or leases, and shall receive the same out of the royalty therein provided for.

To support their argument that the granting clause controls their amount of royalty reservation, the Haussers rely on *Garza v. Prolithic Energy Co., L.P.*, 195 S.W.3d 137 (Tex. App.—San Antonio 2006, pet. denied). In that case, the interpretation of two separate deeds, a Royalty Contract in favor of J.B. Claypool and a Mineral Deed in favor of Homer P. Lee, was in question.

In *Garza*, the Royalty Contract conveyed "an undivided one-half (1/2) interest in and to all of the oil, gas and other minerals in and under the [Property]." *Id*. at 139. The Contract further provided that the said land was under an oil and gas lease, providing for a one-eighth royalty. *Id.* The Contract went on to state that the grantee should receive under any future lease or leases a one-sixteenth part of all oil, gas, and other minerals saved under such lease or leases. *Id.*

The Mineral Deed conveyed an undivided fifteen-thirty-seconds interest in and to all the oil, gas and other minerals under the said property. *Id.* at 141. The Deed also contained further provisions stating that the said land was under an oil and gas lease, providing for one-eighth of

royalty. *Id.* The Deed went on to state that the grantee should receive under any future lease or leases fifteen-thirty-seconds of one-eighth part of all oil, gas, and other minerals saved under such lease or leases. *Id.*

The operators of the wells responsible for paying royalties sought a judicial interpretation of the deeds. *Id.* The trial court concluded the Contract entitled Claypool to one-half of the interest reserved in a lease and Lee to fifteen-thirty-seconds of the interest reserved in a lease. *Id.*

After determining both deeds conveyed a mineral interest as opposed to a royalty interest, we addressed the issue of the conflicting fractions by reviewing a line of frequently cited cases dealing with the issue. *Id.* at 143-45; *see, e.g., Luckel*, 819 S.W.2d at 461-63; *Concord Oil Co. v. Pennzoil Exploration & Production Co.*, 966 S.W.2d 451 (Tex. 1998); *Alford v Krum*, 671 S.W.2d 870 (Tex. 1984), *overruled, Luckel*, 819 S.W.2d at 464; *Garrett v. Dils*, 157 Tex. 92, 299 S.W.2d 904 (1957). Aware that this line of cases involved royalty interests as opposed to mineral interests, we stated this distinction may be without a difference. *Id.* at 143. We also recognized that the conflicting fraction problem arose out of a 1923 case, and that case led to the development of the "three-grant" lease form containing a granting clause, subject to clause, and future lease clause. *Id.* at 145. Understanding that the typical royalty provided for in oil and gas leases was one-eighth, we pointed out the conflicting fractions in the three clauses were often some multiple of one-eighth. *Id.*

After making these observations, we went on to construe the meaning of the deeds. In harmonizing all the parts of the Contract and the Deed, we recognized that if the future lease clause was the controlling clause governing the amount of mineral reservation, then a reversion in interest could potentially occur each time a subsequent future lease was executed. *Id.* Seeing

this position as inconsistent with the four corners of the Contract or Deed, which both involved a single conveyance with fixed rights, we concluded that Claypool and Lee were entitled to receive a one-half interest and fifteen-thirty-seconds interests, respectively, in whatever amount of royalty was paid, even under a future lease. *Id.* at 145-46; *see also Concord Oil*, 966 S.W.2d at 457 (indicating the deed did not contain any language that made it evident two differing estates were being conveyed). Our holding was also strengthened by the language in the Deed, "which restrict[ed] the ability of the grantor to enter into a future lease that provides for less than a one-eighth royalty." *Id.* at 146. Accordingly, we held the granting clauses of the Contract and Deed, each of which conveyed one-half of interest and fifteen-thirty-seconds of interest to Claypool and Lee, respectively, were the governing clauses in determining the amount of the grantees' mineral interests as opposed to the future lease clauses. *Id.*

On the other hand, Cuellar and Rathmell rely on *Neel v. Killam Oil Co., Ltd.*, 88 S.W.3d 334 (Tex. App.—San Antonio 2002, pet. denied) to support their contention that the future lease clause controls the amount of royalty reservation. Cuellar and Rathmell contend the future lease clause should control because the Paloma lease is a future lease that was executed after the deed.

In *Neel*, the grantor, Joe Ortiz, conveyed his entire interest in royalty by deed, known as the Ortiz-Neel deed, to grantees, George E. Neel and Suzy Mayo Neel (Neel and Mayo). *Id.* at 337. The Ortiz-Neel deed mentioned the royalty reservation in its granting clause, existing lease clause, and future lease clause. *Id.* at 337-38. Each of those clauses are almost identical to the language in the clauses of the Escamilla deed. *See id.* at 337-38.

When the Ortiz-Neel deed was executed, the land was subject to a pre-existing oil and gas lease, known as the 1940 lease, which reserved a one-eighth (1/8) royalty interest in production. *Id.* "While the 1940 lease was in effect, Neel and Mayo received a one-sixteenth

royalty, derived by multiplying the one-half interest granted in the Oritz-Neel deed by the one-eighth royalty reserved in the 1940 lease." *Id.* Eventually, the 1940 lease expired, and in 1980, a new lease was executed. *Id.* The new lease "granted a one-fourth royalty in the production of oil and gas." *Id*. Under the new lease, Neel and Mayo continued receiving royalty based on the one-half interest provided in the granting clause of the Ortiz-Neel deed. Relying on *Alford v. Krum*, 671 S.W.2d 870 (Tex. 1984), the lessees initially construed the granting clause as the controlling clause of the grantees' royalty reservation. *Id*.; *see Alford*, 671 S.W.2d at 874 (holding where there is irreconcilable conflict between granting clause and future lease clause, former should control). In 1991, however the Texas Supreme Court rejected the *Alford* approach in *Luckel*, 819 S.W.2d at 459. As a result, the lessees reduced the royalty payments to Neel and Mayo to a fixed one-sixteenth (1/16) royalty interest in production as outlined by the future lease clause of the Ortiz-Neel deed. *Id*.; *see also Luckel*, 819 S.W.2d at 459 (highlighting *Alford* approach failed to harmonize deed's provisions pursuant to four corners rule and under four corners rule).

Neel and Mayo filed suit for declaratory judgment, requesting that the trial court define their royalty interest as "one-half royalty interest in the oil and gas produced" from the land. *Id*. at 337. The parties filed competing motions for summary judgment, and the trial court held "that Neel and Mayo owned a fixed one-sixteenth royalty reservation[,]" and this court affirmed the trial court's judgment. *Id.*

We began our analysis with a discussion of the conveyance that preceded the Ortiz-Neel deed. *Id.* at 340. In reviewing that conveyance, we discovered "Joe Ortiz [had] acquired a one-sixteenth interest in present production under the 1940 lease and a one-sixteenth interest in future production." *Id.* Given that Joe Ortiz only received a one-sixteenth in royalty, we held that Joe

Ortiz could only convey what he had received, a royalty interest of one-sixteenth. *Id.* at 341. After looking back at the prior deed to determine Ortiz's amount in royalty interest, we held Ortiz conveyed two things in the Ortiz-Neel deed: (1) a present interest of one-half of the one-eighth royalty reserved in the 1940 lease, which resulted in a one-sixteenth royalty interest, and (2) upon expiration of the 1940 lease, the right to receive one-sixteenth of production any future leases. *Id.* Based on that conclusion, we further stated the 1980 lease triggered the operation of the future lease clause as the controlling clause in determining the grantees' royalty reservation. *Id.* Therefore, under the future lease clause, Neel and Mayo were entitled to only one-sixteenth interest in production. *Id.*

After reviewing these cases, we disapprove of our analysis in *Neel*. Rather than construing the four corners of the deed to harmonize and give effect to all its provisions and to determine whether the granting clause or future lease clause controlled the amount of royalty reservation, *Neel* relied on a prior deed to provide the interpretation. *Id.* at 340-41. As previously noted, we construe a deed and harmonize and give effect to all its provisions by ascertaining the parties' intent from the four corners of the document. *Luckel*, 519 S.W.2d at 411. This is the analysis we followed in *Garza*, in which we considered all the parts of the deeds to determine the parties' intent. *Id.* at 145-46.

In the instant case, after harmonizing all the parts of the Escamilla deed, we conclude the Escamilla deed conveys an undivided one-half royalty interest to the Haussers. As in *Garza*, our decision is consistent with *Concord Oil Co.* because the Escamilla deed does not contain any language suggesting two differing estates were being conveyed. *See Concord Oil Co.*, 966 S.W.2d at 457; *Garza*, 195 S.W.3d at 146. Rather, the Escamilla deed, like the deeds in *Garza*, involves a single conveyance with fixed rights. *See Garza*, 195 S.W.3d at 146. Additionally,

our construction is reinforced by language in the Escamilla deed which restricts the grantor's ability to enter into a future lease containing a royalty less than one-eighth.[1] *See id.* It therefore follows that under the Paloma lease, the Haussers are entitled to an undivided one-half of the one-fourth of royalty, in other words, one-eighth of royalty.

Accordingly, because the trial court improperly construed the Escamilla deed, we conclude the trial court erred in granting summary judgment in favor of Cuellar and Rathmell.

### Attorney's Fees

In their second issue, the Haussers contend the trial court erred in awarding attorney's fees to Cuellar and Rathmell under the Declaratory Judgment Act because the Haussers' suit involved a determination of the parties' competing claims to an interest in land, and as such it is a title dispute. *See Martin v. American*, 133 S.W.3d 262, 267 (Tex. 2004) (indicating a trespass to try title is method for determining interest in land). The Haussers contend that because title disputes are governed by Chapter 22 of the Texas Property Code, this case cannot be pled as a declaratory judgment in order to recover attorney's fees not otherwise available; as a result, the trial court's award of attorney's fees was erroneous. *See EOG Res. v. Killam Oil Co.*, 239 S.W.3d 293, 304 (Tex. App.—San Antonio 2007, pet. denied) (holding recovery of attorney's fees is barred in trespass to try title action because not provided for in Texas Property Code); *McRae Exploration & Prod., Inc. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 684 (Tex. App.—Waco 1998, no pet.) (holding title disputes are governed by Chapter 22 of Texas Property Code).

---

[1] "Nevertheless, at no time, neither the Grantor, nor the heirs, administrators, executors or assigns of the Grantor shall make or enter into any lease, contract, leases or contracts for development of the said land, or any portion of same, for oil, gas or other minerals, unless each and every such lease, contract, leases or contracts shall provide for at least a royalty on oil of the usual one-eighth to be delivered free of cost in the pipe line, and a royalty on natural gas of at least one-eighth of the value of same when sold or used off the premises, or one-eighth of the net proceeds of such gas, and one-eighth of the net amount of gasoline manufactured from natural or casinghead gas, and one-eighth royalty on all other minerals produced from the said premises."

Here, it appears that the trial court awarded Cuellar and Rathmell attorney's fees under the Declaratory Judgment Act ("the Act"). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009(a) (West 1997) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). While the Act provides that the trial court may use its sound discretion to award a party attorney's fees, the Act qualifies the trial court's discretion as "'subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law.'" *Neeley v. West Orange-Cove Consol. Indep. School. Dist.*, 176 S.W.3d 746, 799 (Tex. 2005) (quoting *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex .1998)); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009(a).

As to this issue, we express no opinion on the propriety of the award of attorney's fees. Because we have concluded that the trial court erred in granting summary judgment in favor of Cuellar and Rathmell, we remand the issue of attorney's fees to the trial court for reconsideration as to whether an award of attorney's fees is appropriate. *See Neeley*, 176 S.W.3d at 799.

## CONCLUSION

Based on the foregoing, we reverse the trial court's judgment. We render judgment that the Haussers are entitled to an undivided one-half of the royalty interest reserved in the Paloma lease and in any future leases, and remand the case to the trial court to reconsider what award of attorney's fees, if any, is appropriate.

Marialyn Barnard, Justice