**Scott W. PETTY, Jr., Appellant,**

**v.**

**WINN EXPLORATION CO., INC., Appellee.**

**No. 04-90-00567-CV.**

Court of Appeals of Texas, San Antonio.

April 24, 1991.

Rehearing Denied May 22, 1991.

A.W. Worthy, Richard B. Moore, Peter E. Hosey, Gresham, Davis, Gregory, Worthy & Moore, San Antonio, Donato Ramos, Person, Whitworth, Ramos, Borchers & Morales, Laredo, John W. Petry, Petry & Petry, P.C., Carrizo Springs, for appellant.

J.A. Canales, Nancy M. Simonson, Canales & Simonson, P.C., Corpus Christi, John W. Hughes, Eagle Pass, Jesse Gamez,

Law Offices of Jesse Gamez, Inc., John Thomas Marshall, San Antonio, Joe R. Greenhill, Susan M. Cory, Baker & Botts, Austin, for appellee.

Before REEVES, C.J., and CHAPA and GARCIA, JJ.

ON APPELLEE'S MOTION FOR RE-HEARING and ON APPELLANT'S AND APPELLEE'S MOTION FOR EN BANC CONSIDERATION

CHAPA, Justice.

The rehearing is granted, the motions for en banc consideration denied, the majority opinion issued on December 26, 1990 is withdrawn, and the following opinion is substituted as the majority opinion of this court.

This is an appeal from an interlocutory temporary injunction court order granted in favor of Winn Exploration Company (hereinafter "Winn"). The temporary injunction prohibits Scott Petty, Jr. (hereinafter "Petty"), the owner of the surface and a portion of the minerals in the land involved, from interfering with Winn's use of an easement to gain access to lands for development of oil and gas.

The dispositive issue is whether the trial judge abused his discretion in granting the temporary injunction. The dissent would provide a legal interpretation of the numerous documents involved here in such a way that the merits of the case would be finally decided as a matter of law. We disagree.

In *Davis v. Huey*, 571 S.W.2d 859 (Tex. 1978), the Texas Supreme Court stated:

The appeal of an order granting or denying a temporary injunction is an appeal from an interlocutory order, which is expressly authorized by Article 4662, Texas Revised Civil Statutes Annotated. Accordingly, the merits of the underlying case are not presented for appellate review. Appellate review of an order granting or denying a temporary injunction is strictly limited to determination of whether there has been a clear abuse of discretion by the trial court in granting

or denying the interlocutory order. [Citations omitted.]

. . . .

On appeal the reviewing court is limited in its consideration as to whether the trial court abused its discretion in making the foregoing determination. The appellate court may not substitute its judgment for that of the trial court. [Citations omitted.] An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence. . . .

*Id.* at 861–862.

■ "It is the settled law in this State that the propriety of a temporary injunction against interference with an easement does not depend on the ultimate merits of the controversy regarding the existence vel non of the easement, and that the question upon appeal from a pendente lite injunctive order is whether the trial judge abused his discretion in preserving the status quo as of the date on which controversy arose." *Richter v. Hickman*, 243 S.W.2d 466, 468 (Tex.Civ.App.—Galveston 1951, no writ). In an easement temporary injunction appeal, "[t]he controlling question presented is whether the evidence disclosed a bona fide dispute as to the existence of an easement." *Egan v. Woodell*, 720 S.W.2d 169, 171 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.).

■ In *Sun Oil Co. v. Whitaker*, 483 S.W.2d 808 (Tex.1972), the Texas Supreme Court stated:

The oil and gas lessee's estate is the dominant estate and the lessee has an implied grant, absent an express provision for payment, of free use of such part and so much of the premises as is reasonably necessary to effectuate the purposes of the lease, having due regard for the rights of the owner of the surface estate. [Citations omitted.] The rights implied from the grant are implied by law in all conveyances of the mineral estate and, absent an express limitation thereon, are not to be altered by evidence that the parties to a particular instru-

ment of conveyance did not intend the legal consequences of the grant.

*Id.* at 810–811.

"[T]he mineral lessee, holds the dominant estate, and as such has the right of ingress and egress upon the land for exploration and production of oil and gas", and the surface owner cannot "unreasonably interfere[ ] with the rights of … the mineral lessee." *Ball v. Dillard*, 602 S.W.2d 521, 523 (Tex.1980). The term "subject to" in a mineral transaction is "a limiting clause, and a qualifying term" which "mean[s] 'subordinate to,' 'subservient to' or 'limited by' " and serves to incorporate the "subject to" documents. *Cockrell v. Texas Gulf Sulphur Co.*, 157 Tex. 10, 299 S.W.2d 672, 676 (Tex.1956). In construing such documents, "all parts of the [documents] must be given effect if possible to do so without violating any legal principles … so as to give effect to all parts thereof and … harmonize all provisions therein and not strike down any part of the deed unless there is an irreconcilable conflict." *Id.* at 676.

At the outset of the hearing before the trial court, appellee contended that the easement dispute involved the 1970 Glasscock Lease, 1971 Glasscock–A Lease (Meridian Farm–Out to Winn), Howett Lease, Bourge–Johnson Lease, GLG Leases, Petty Leases, Booth Leases, and Dobbins Leases. The appellant countered that the merits of the case were not at issue, and, therefore, the only relevant leases were the 1970 and 1971 Glasscock Leases and the Howett–Johnson Lease. All the mentioned leases, as well as correspondence and written memos of alleged agreements between representatives of Winn and Petty, and the Right of Way agreement between Winn and Petty which resulted in the building of the $150,000.00 Winn Road, were introduced into evidence.[1]

■ Although the facts were somewhat in dispute, evidence was presented that indicated that in 1970, Leta Glasscock, who at the time apparently owned all the land involved in the relevant leases in question,

entered into a mineral lease with Winn known as the 1970 Glasscock Lease, which provided, in relevant part, as follows:

Lessor, … does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals (whether or not similar to those mentioned), together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks, power stations, telephone lines, and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto.

It is uncontradicted that the 1971 Glasscock Lease, which eventually contained the Winn Glasscock A–1 well, was adjacent to the 1970 Glasscock Lease and was also owned by Leta J. Glasscock at the time the 1970 Glasscock Lease was executed. Winn obtained an agreement with Glasscock permitting Winn a right of way off of the Loma Vista County Road, apparently across the Glasscock land, later known as the 1971 Glasscock Lease, adjacent to and north of the 1970 Glasscock Lease to gain access to the 1970 Glasscock Lease.

Thereafter, in 1977 and 1978, Petty became the surface owner of a large portion of the Glasscock property which included the property covered by the 1970 and 1971 Glasscock Leases. On March 12, 1987, Petty wrote a letter to Winn encouraging him to exchange the right of way off of the Loma Vista County Road, which Petty admitted was "so torn up", in return "for an easement along the south edge of [the Petty] property fronting on Highway 1867." Petty's repeated offers resulted in the November 3, 1989 right of way agreement between Petty and Winn exchanging the right of ways, which provided in pertinent part the following:

---

1. See exhibit, a map of the Rancho Paisano.

11. *Subject to:* This roadway Permit is specifically made subject to any easements existing on said land and to any other rights or servitude to which said land may be subject which are senior to the rights and privileges hereby granted.

The agreement resulted in Winn building a $150,000.00 all weather road on the southern edge of the Petty property, through the Lyon's Ranch, and into the 1970 Glasscock Lease, where Winn also constructed an expensive headquarters for area drilling since his horizontal drilling operations had proved so successful. On November 27, 1989, Petty authorized Winn, in writing, to place cattle guards on the easement crossing the Lyon/Petty property and further, specified the type of cattle guard construction, with which Winn complied to the letter. On December 5, 1989, Petty notified Winn that he had executed a mineral lease with GLG Energy on another unleased area in the vicinity and was authorizing GLG to enter through the Winn Road which had been expensively constructed and kept up by Winn alone. Meanwhile, Meridian Oil Company, the lessee of mineral rights on the 1971 Glasscock Lease, Howett Lease, and the Bourge Lease, executed a farm-out agreement with Winn. This farm-out agreement gave Winn a working interest in and all rights to a part of these Meridian leases and provided for a $250,000.00 penalty from Winn to Meridian if Winn did not start development by September 3, 1990. The farm-out agreement included the acreage of the 1971 Glasscock Lease where the Winn A–1 well, which is the subject of this litigation, was finally located. On December 20, 1989, Petty notified Winn by letter that since the Winn Road was completed, he was locking the old entrance gate from the Loma Vista County Road, thus leaving Winn solely with the Winn Road entrance. At around the same time, Petty entered into an agreement with Meridian Oil Company to drill a water well for its oil and gas exploration on a part of the 1970 Glasscock Lease not included in the farm-out to Winn, with rights of ingress and egress through the Loma Vista County Road gate. Because of the penalty requirements in the Meridi-an/Winn farm-out, Winn made arrangements with Petty, in the presence of Petty's manager and two attorneys, to gain access to the Meridian/Winn farm-out acreage through the north-west corner of Winn's 1970 Glasscock lease.

The uncontradicted evidence disclosed that a roadway and a gate had existed for many years at that precise location which permitted ingress and egress from the 1970 Glasscock Lease to Winn's Meridian farm-out acreage. There was no contradiction that the arrangement was reduced to writing in a letter from Winn to Petty dated August 24, 1990 which reflected the following understanding:

1. Winn will continue to use the roadway described in the November 3, 1989 Agreement Concerning Right of Way to gain access to its Leta J. Glasscock lease.

2. Winn will gain access to its Meridian farm-out acreage through the north-west corner of its Leta J. Glasscock lease, and install a cattle guard there.

3. Winn will not utilize the "West Gate" off the county road. The key to same will remain in Eagle Pass for the time being.

4. Petty will prepare a proposed agreement concerning these items during the week of August 27th and Winn and Petty will discuss same on Friday August 31st.

5. Petty and Winn reserve all their respective legal rights during the negotiations concerning these items.

Because the existing gate at the location was obviously for the purpose of driving cattle through, Winn constructed a cattle guard as per Petty's specifications about thirty (30) feet from the cattle gate and constructed a short by-pass road connecting the existing road on both sides of the fence. Winn then commenced its A–1 well on the Meridian/Winn farm-out acreage (on the 1971 Glasscock lease) which was less than one mile from the fence dividing the 1970 Glasscock lease and the Meridian/Winn farm-out acreage. Although Petty concedes that he has never complied with the agreement by preparing a proposed written agreement concerning the items covered by the Winn letter dated

August 24, 1990 as had been agreed to, Petty nevertheless sent Winn a certified letter on September 10, 1990 advising Winn that he had hand-delivered ten (10) keys for the west gate on the Loma Vista County Road to the Winn field office; Petty stated that effective 10:00 a.m., September 11, 1990, he was rescinding any authority to cross the lease lines he had granted in conjunction with the August 24th, 1990 memo of agreement; Petty asserted that the west gate would be the only point permitted for ingress and egress to the Winn farm-out acreage; Petty stated that Winn's alleged "unauthorized actions, in crossing the lease line" between the 1970 Glasscock lease and the Winn farm-out acreage, would result in Winn being responsible for damages and "in termination of [Winn's] rights under the Right-of-Way Agreement dated November 3, 1989"[2] effective September 26, 1990 (which would terminate Winn's use of the expensively built Winn Road); Petty insisted, moreover, that Winn "remove the cattle guard described in [Petty's] letter to [Winn] dated August 31, 1990; and, additionally, ordered that Winn restore the fence to its original condition since the cattleguard was not placed in the approved location."

The next day, September 11, 1990, Petty had a gate welded across the entrance to the cattle guard between the 1970 Glasscock lease and the Meridian/Winn farm-out acreage, which was removed by Winn upon obtaining a temporary restraining order. A subsequent hearing resulted in the temporary injunction before this court.

Uncontradicted testimony disclosed that although it was less than a mile from the cattle guard in question to the Winn A–1 well, it would be twenty (20) miles if Winn would be required to go by way of the Winn Road (the use of which would terminate, according to Petty, on September 26, 1990), Highway 1867, and through the Loma Vista County Road, which was described by Petty as "torn up" and by Winn as often requiring four wheel drive. Considering the number of vehicles needed for the Winn operation, the expense would be considerable. Petty testified that although he never complied with his agreement to prepare a written proposed agreement pertaining to the alleged right of way in question, he had pursued this course of action because Winn failed to show up for the meeting at the end of August (allegedly because Winn's attorney was not available) and, additionally, because Winn had put the cattle guard in question some thirty (30) feet from the existing gate where Petty wanted the cattle guard installed. Petty conceded that he had purchased the surface estate from Glasscock subject to all the existing oil and gas leases and easements in place, and existing right of way agreements Glasscock had entered into; moreover, Petty admitted that he had agreed to all the stipulations set out in Winn's letter to him dated August 24, 1990. Petty further conceded that the oil lease is the dominant estate and that he, as the surface owner, was required to give oil operators reasonable access to the surface in order to conduct their operation. Petty contended, however, that he had a deer conservation program and wanted to avoid a "loop" road on his ranch.

Considering the maze of oil leases, right of way leases, farm-out agreements, and written agreements implicated by the evidence presented; the burdens placed upon the appellant by the standard of review; the limitation upon this court in reviewing such interlocutory orders; the legal recognition of the dominance of mineral rights over surface rights; the legal construction favoring implied and expressed easements in mineral lease cases; and the legal implications of "subject to" clauses, we conclude that the appellant has failed to show that the trial judge abused his discretion in granting the temporary injunction under these circumstances.

The judgment is affirmed.

REEVES, Chief Justice, dissenting.

I continue to stand by the original opinion wherein former Chief Justice Cadena and I were the majority. A trial court

---

**2.** Known as the Winn Road Agreement.

abuses its discretion if it grants a writ of injunction when the evidence fails to furnish any reasonable basis for a conclusion that the appellant has a probable right of recovery. *Camp v. Shannon,* 162 Tex. 515, 348 S.W.2d 517, 519 (1961). This case turns on the interpretation of an easement.

In 1977, Glasscock and Winn entered into a right-of-way agreement. These rights were later acquired by Overly Operating Company (Overly). Winn and Overly decided to relinquish this right-of-way to Petty in exchange for another right-of-way on what is now the "1989 Roadway." They re-conveyed and granted to Petty their right, title, and interest in the Right-of-Way Agreement of 1977.

Petty then granted an easement to Winn which is styled "Agreement Concerning Rights of Way" which is dated November 3, 1989 (1989 Agreement). This easement controlled use of the "1989 Roadway" for exclusive access to a mineral lease which is being developed by Winn (1970 Glasscock lease). The easement specifically provides for a fifty foot right-of-way for road purposes only across Petty's land in Zavala County. The location of the easement is on the southern portion of the ranch, adjacent to and on the north side of the south fence line of Petty's property.[1] The pertinent portions of the easement provide as follows:

1. *Purpose:* This roadway Permit is to allow Winn, his successors and assigns, ingress and egress from Winn's Leta J. Glasscock, et al, Lease covering 8,891.5 acres of land in Zavala County, Texas ... for the express purpose to allow Winn and his assigns to conduct its drilling, development and production of Winn's and his assign's interest in the lands covered by such Leta J. Glasscock et al Lease only.

7. *Limitation of use:* Except for Grantor's reserved rights and uses, the use of the roadway will be limited by Winn exclusively to Winn, its employees and sub-contractors and its successors and assigns for the use by Winn and its assigns on its Leta J. Glasscock Lease

and will not be used to travel to any other property other than to the lease lands covered by the Leta J. Glasscock lease referred to above [the 1970 Glasscock Lease] as it may be in force from time to time and at the time of use of this roadway easement. This roadway easement shall be the exclusive entrance and exit to and from the lands covered by said Leta J. Glasscock lease. The roadway is to be used by Winn, its employees and subcontractors, and assigns, for the purpose of supplying services and materials in connection with the drilling, testing, completing, equipping, operating and producing that portion of the Leta J. Glasscock Lease owned by Winn and/or his assigns ...

11. *Subject to:* This roadway Permit is specifically made subject to any easements existing on said land and to any other rights or servitude to which said land may be subject which are senior to the rights and privileges hereby granted.

In addition to the 1970 Glasscock lease, Winn also has a working interest in three other leases, the 1971 Glasscock lease, the Howett Lease, and the Bourge lease. The 1970 Glasscock lease is contiguous to the 1971 Glasscock lease, and the Howett lease and Bourge lease are contiguous to the 1971 Glasscock lease. Winn requested use of the 1989 roadway be extended to the 1971 Glasscock, Bourge, and Howett leases. Petty agreed to the temporary use of the easement, pending a more permanent arrangement. The parties did not reach a permanent agreement, and Petty notified Winn that the temporary use was terminated. Winn continued to use the easement and this suit ensued. The trial court initially restrained and later temporarily enjoined Petty from interfering with Winn's use of the easement pending a final hearing on the merits.

Winn, claims it is entitled to access provided in the 1989 Agreement because of the *Subject to* clause in paragraph eleven of the 1989 Agreement and a clause in the

1. See exhibit, a map of the Ranch Paisano.

1970 Glasscock lease which provides as follows:

1. Lessor, ... does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals ... together with the right to make surveys on said land, lay pipes, ... necessary or useful in lessee's operations in exploring, ... and transporting minerals produced from the land covered hereby or any other land adjacent thereto ...

A temporary injunction will be reversed on appeal only if the court has clearly abused it discretion or **failed to correctly apply the law to the undisputed facts.** *Manning v. Wieser,* 474 S.W.2d 448, 449 (Tex. 1971); *Jordan v. Rash,* 745 S.W.2d 549, 554 (Tex.App.—Waco 1988, no writ).

The contracts before us are clear and unambiguous and the interpretation of them is a matter of law. *Bradshaw v. Lower Colorado River Auth.,* 573 S.W.2d 880, 883 (Tex.Civ.App.—Beaumont 1978, no writ). The courts will give effect to the parties' intentions as expressed by the writing because the objective intent of the parties controls. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968).

The 1989 Agreement expressly limited Winn's right to use the roadway to the 1970 Glasscock lease. It was executed at a later date and for a specific purpose; ingress and egress solely to the 1970 Glasscock lease. The language in the 1970 Glasscock lease granting the right to transport minerals produced from the land leased to any other land adjacent thereto would burden the easement beyond its specific purpose and the obvious contemplation of the parties. The easement could not be enlarged without consent of the parties. *See Bickler v. Bickler,* 403 S.W.2d 354, 359 (Tex.1966); *Kearney & Son v. Fancher,* 401 S.W.2d 897, 905 (Tex.App.—Fort Worth 1966, writ ref'd n.r.e.).

Winn contends that the clause in the 1989 Agreement which provides that the roadway is subject to any easement existing on said land and to any other right which the land may be subject to refers to the 1971 Glasscock lease. Consequently, through the rights provided in that lease pertaining to adjacent land, Winn has the right to use the easement for the development of the other leases. I disagree. The words "subject to" in the agreement refer to any limitation, burden, or prior right that might have attached and encumbered the 1989 Roadway. *Cockrell v. Texas Gulf Sulphur Co.,* 157 Tex. 10, 299 S.W.2d 672, 676–77 (1956); *Bradshaw v. L.C.R.A.,* 573 S.W.2d 880, 883 (Tex.App.—Beaumont 1978, no writ).

I am of the opinion that, as a matter of law, Winn has no right to use the 1989 Winn/Petty right of way for the development of the 1971 Glasscock, Bourge, and Howett leases.

EXHIBIT