

# Fourth Court of Appeals
## San Antonio, Texas

## DISSENTING OPINION

No. 04-12-00755-CV

Roger L. **GRAHAM**, John B. Graham, John Regmund, Glenn Regmund, Wilma Regmund, Raellen Regmund Mattingly, Rayanne Regmund Chesser, Albert O. Menn, and Irene C. Menn, Appellants

v.

George J. **PROCHASKA**, Jr., Patricia Prochaska Holland, Jeanette Prochaska Mazza, Dawn Prochaska Snyder, Frederick James Prochaska, II and Rebecca Prochaska Willis, Appellees

From the 81st Judicial District Court, Karnes County, Texas
Trial Court No. 12-02-00023-CVK
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice
Dissenting Opinion by: Marialyn Barnard, Justice

Sitting:       Sandee Bryan Marion, Justice
               Marialyn Barnard, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  January 15, 2014

Admittedly, without reference to the John Hancock/Joslin and Joslin/Powell deeds, the majority could not reach the conclusion that the 1950 deed reserved to Prochaska a floating one-half royalty interest as opposed to a fixed one-sixteenth royalty interest. Because Texas law mandates the 1950 deed be harmonized by reference only to the language within the four corners of the document, I must respectfully dissent.

## *Proper Interpretation of an Unambiguous Deed*

I believe the majority misapplies the law pertaining to proper deed construction, resulting in an incorrect construction of the unambiguous 1950 deed.[1]  Because of a misinterpretation of the law relating to the proper construction of unambiguous deeds, the majority determines the 1950 deed provides for a floating one-half royalty interest rather than a one-sixteenth fixed royalty interest.  I disagree with the majority.  Under a proper application of the law, the Regmunds are correct in their claim that the provisions of the 1950 deed, when harmonized, reserved a fixed one-sixteenth royalty interest in favor of Prochaska.

The majority reaches its conclusion because it is based, from the outset, on an incorrect premise, i.e., that a court is permitted to look outside the four corners of an unambiguous deed to interpret the parties' intent.  The majority believes a court may look at documents outside the deed in question in order to interpret it if the other documents upon which the court relies are referenced in the deed.  Majority Op. at _____.  The majority includes a string cite of cases in support of this proposition.  However, these cases do not apply to this case.  In essence, the majority has created an exception to the long-recognized "four corners rule."  *See Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *Hausser v. Cuellar*, 345 S.W.3d 462, 467 (Tex. App.—San Antonio 2011, pet. denied) (en banc).

According to the Texas Supreme Court:

The primary duty of a court when construing [an unambiguous] deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the "four corners" rule.

---

[1] I agree with the majority and the parties that the 1950 deed is unambiguous.  An unambiguous deed "is so worded that it can be given 'a certain or definite legal meaning or interpretation.'"  *Hausser v. Cuellar*, 345 S.W.3d 462, 467 (Tex. App.—San Antonio 2011, pet. denied) (en banc) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

*Luckel*, 819 S.W.2d at 461; *see also French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 796 (Tex. 1995); *Hausser*, 345 S.W.3d at 467; *Garza v. Prolithic Energy Co., L.P.*, 195 S.W.3d 137, 141 (Tex. App.—San Antonio 2006, pet. denied). The four corners rule is a "canon of construction" and means a court must look *at the instrument in question* to ascertain the intent of the parties. *French*, 896 S.W.2d at 797 (citing *Luckel*, 819 S.W.2d at 461) (emphasis added).

The majority correctly cites the four corners rule as stated in *Luckel*, but then essentially abrogates the rule, or creates an exception to it, by relying on documents other than the deed to interpret the parties' intent. To support its decision to rely on documents outside the four corners of the 1950 deed, the majority relies on several cases, which in my opinion are inapplicable to the interpretation of an unambiguous deed because they either do not stand for the proposition cited or are distinguishable on the facts or issue presented.

The majority begins with *Cockrell v. Tex. Gulf Sulphur Co.*, 157 Tex. 10, 299 S.W.2d 672 (1956). In *Cockrell*, the supreme court was called upon to interpret the amount of sulphur royalties due under a deed. 299 S.W.2d at 673–78. In making its determination, the majority looked to documents outside the deed, specifically certain mineral leases, to determine the amount of royalties due. *Id.* However, a close reading of the case makes it apparent that although never specifically stated, the majority of the court found the deed in question to be ambiguous, which made it acceptable to look beyond the four corners of the deed and incorporate extrinsic documents. *Id.* at 676–77.

There are several indicators in the opinion that strongly suggest the court believed it was dealing with an ambiguous deed. First, the court relied upon the canon that "a deed can pass no greater estate than that owned by the defendant." *Id.* at 676. As recognized in *Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*, such canons "*do not apply when the deed is unambiguous.*" 192

S.W.3d 808, 811 (Tex. App.—Eastland 2006, pet. denied) (emphasis added). Thus, the court's reliance on a canon of construction points to a finding of ambiguity. Second, the court specifically noted that at trial, numerous documents were introduced into the record to show the defendant recognized the leases, i.e., the extrinsic documents. *Id.* at 677. The introduction of such documents also points to ambiguity. Finally, the dissent by Justice Smith makes plain reference to his disagreement with the majority's decision to look beyond the four corners of the deed because *he* found the deed to be unambiguous. *Id.* at 679 (Smith, J., dissenting). Therefore, in *Cockrell*, the court was obviously attempting to construe an ambiguous deed.

I agree that where the deed in question is ambiguous, reference to other canons of construction, including the canon that permits reference to extrinsic documents, is not precluded. However, the majority determined the 1950 deed was unambiguous, and it was therefore limited to consideration of the language in the deed itself, *see Luckel*, 819 S.W.2d at 461, and there is nothing in *Cockrell* that holds to the contrary. Accordingly, the majority's reliance on *Cockrell*, which construed an ambiguous deed by reference to outside documents, is misplaced.

Moreover, and importantly, the *Cockrell* court's holding was very specific, stating that the phrase *"subject to"* in a mineral deed serves to incorporate the "subject to" documents. *Cockrell*, 299 S.W.2d at 676. In *Cockrell*, the deed stated it was "subject to" certain mineral leases. *Id.* at 674. Based on this specific language, the court determined the leases were incorporated into the deed. This "subject to" language, which was the very basis of the court's decision to consider the extrinsic documents in *Cockrell*, is completely absent from the language in the deed before this court.

In the 1950 deed, the phrase "subject to" does not appear. In fact, the deed language merely states Prochaska's reservation is "burdened with paying" certain mineral royalty reservations

which are found in the John Hancock/Joslin and Joslin/Powell deeds. To suggest, as does the majority, that this language is comparable to the "subject to" language relied upon in *Cockrell* and its progeny misconstrues the bases for those holdings. Burdening an interest with a payment requirement, which is all the 1950 deed does with regard to the extrinsic deeds, is wholly different from making the entire deed "subject to" and thereby incorporating the extrinsic documents. Thus, *Cockrell* does not support the majority's decision to rely upon the extrinsic John Hancock/Joslin and Joslin/Powell deeds.

The majority also relies upon a 1991 case from this court, *Petty v. Winn Exploration Co., Inc.*, 816 S.W.2d 432 (Tex. App.—San Antonio 1991, writ denied) (op. on reh'g), which involved the interpretation of an easement agreement. However, that case, like *Cockrell*, does not support the majority's decision to look outside the four corners of the 1950 deed because it too involved the interpretation of what the majority obviously determined to be an ambiguous easement agreement, which would permit the court to look beyond the easement agreement itself. *See id.* at 434–36. Moreover, the easement agreement in *Petty*, like the deed in *Cockrell*, contained the specific "subject to" language, incorporating the extrinsic documents the court used in determining the meaning of the agreement. *Id.* at 435. Thus, just as the decision in *Cockrell* is inapposite because the deed here does not contain the requisite "subject to" language, the decision in *Petty* is equally inapplicable.

The other cases relied upon by the majority are also inapposite. The majority cites *Johnson v. Fox* for the proposition that courts are permitted to construe an instrument containing a reservation with other instruments to which the reservation refers. 683 S.W.2d 214, 216 (Tex. App.—Fort Worth 1985, no writ). *Johnson* relies on two cases for that proposition, a 1952 case from this court and 1936 case from the Texarkana Court of Appeals. *See id.* (citing *Williams v. J.*

*& C. Royalty Co.*, 254 S.W.2d 178, 178–80 (Tex. Civ. App.—San Antonio 1952, writ ref'd); *Tipps v. Bodine*, 101 S.W.2d 1076 (Tex. App.—Texarkana 1936, writ ref'd)). However, the deeds at issue in both *Williams* and *Tipps* contained the "subject to" language discussed above, thereby incorporating the extrinsic instruments. *See* 254 S.W.2d at 178; 101 S.W.2d at 1076, 1078–79. As noted above, such language was not included in the 1950 deed. Thus, *Johnson* is no more applicable than *Cockrell* or *Petty*.

The majority relies on the cases cited above, glossing over the absence of the "subject to" language in the deed at issue, simply stating, ". . . by specifically referencing and identifying the prior deeds, [the 1950 deed] incorporates their description of those interests into itself, like the "subject to" clause in *Cockrell* and the reservation in *Johnson*." Majority Op. at _____. Referencing and identifying a document is a far cry from incorporating it. The case law cited by the majority specifically relied on the "subject to" language in deciding it could look at the extrinsic documents – there is nothing to suggest these courts would have looked outside the four corners of the documents being interpreted but for that very specific phrase. However, without this interpretation of the case law, the majority is unable to support its decision to look outside the four corners of the 1950 deed.

The final two cases relied upon by the majority for the proposition that it is permissible to look beyond the four corners of the 1950 deed to determine the parties' intentions are *Scheller v. Groesbeck*, 231 S.W. 1092 (Tex. Comm'n App. 1921, judgm't adopted)[2] and *CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The courts in these cases held "all instruments in a chain of title, when referred to in

---

[2] I note that where the Texas Supreme Court adopts the judgment of a Commission decision, this indicates the supreme court approved neither the Commission's specific holdings nor its reasoning. *See The Greenbook, Texas Rules of Form* 5.2.4 (Texas Law Review Ass'n ed., 12th ed. 2010).

a deed or any instrument conveying an interest in real property will be read into it." This statement was made in the context of the issue presented in those cases, which was *ownership* or *extent of ownership* based on title, and the documents considered in these cases were actually within the chain of title.

The phrase "chain of title" refers to documents showing successive ownership history of the property, and includes the successive conveyances commencing with the patent from the government . . . down to and including the conveyance to the present holder." *Hahn v. Love*, 394 S.W.3d 14, 28 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). It is axiomatic that when there are competing claims regarding title to property that documents referenced in the applicable deeds, i.e., documents within the chain of title, are subject to consideration. Here, however, the extrinsic documents the majority considers are not within the chain of title with regard to ownership. Rather, they are peripheral burdens on title and are not part of the successive ownership history. *See id.* This is not a chain of title case. Accordingly, neither *Scheller* nor *CenterPoint* support the majority's foray beyond the four corners of the 1950 deed.

Based on the foregoing, I do not believe the majority has cited any germane authority that would support its decision to consider the John Hancock/Joslin and Joslin/Powell deeds in determining the parties' intent with regard to the Prochaska reservation. Additionally, the majority has rejected recent authority from this court, attempting, but failing, to distinguish it. *See Hausser*, 345 S.W.3d at 467.

In *Hausser*, a majority of this court, sitting en banc, specifically held: "[W]e construe a deed and harmonize and give effect to all its provisions by ascertaining the parties' intent from the four corners of the document." 345 S.W.3d at 469. In determining what interest was conveyed by the deed at issue in *Hausser*, we rejected this court's prior panel decision in *Neel v. Killam Oil*

*Co., Ltd.*, 88 S.W.3d 334 (Tex. App.—San Antonio 2002, pet. denied), which, in determining what interests the parties were entitled to, considered a prior deed, i.e., an extrinsic document. *Id.* We specifically disapproved of *Neel* because "rather than construing the four corners of the deed to harmonize and give effect to all its provisions . . . *Neel* relied on a prior deed to provide the interpretation." *Id.* That is precisely what the majority is doing in this case with regard to the 1950 deed. The majority, however, claims the holding in *Hausser* is no bar to its decision to look beyond the four corners because "[t]he prior deed relied upon by the *Neel* court does not appear to have been referenced in the deed actually being construed, whereas the reservation before us does refer to and identify the deeds creating the prior interests." Majority Op. at _____. I must take issue with the majority's attempt to distinguish *Hausser*, a distinction the majority makes in a footnote. *See* Majority Op. at _____ n.7.

First, *Neel* does not state whether the prior deed was referenced in the deed at issue; the opinion is silent on this matter. Thus, it is a leap for the majority to simply conclude the prior deed was not referenced in the subsequent deed. Second, and most importantly, nowhere in *Hausser* did we state our disapproval of *Neel* was based on the fact that the deed at issue failed to reference or somehow incorporate the prior deed. Rather, our disapproval was based on the fact that the *Neel* court looked beyond the four corners, not on its reasons for doing so. There is absolutely no suggestion in *Hausser* that if the prior deed in *Neel* had been referenced in the deed at issue, we would have found *Neel* controlling.

Given my strong conviction that the majority improperly exceeded the scope of review with regard to the unambiguous 1950 deed, I will now review the deed in accordance with the four corners doctrine and the appropriate rules of construction to determine the type and extent of the Prochaska reservation.

***Applying the Proper Rules of Construction to the Unambiguous 1950 Deed***

As noted above, the majority's analysis contains an important misapplication of the law. The result is the creation of an exception to the long-standing four corners rule and, relevant to the case before us, an incorrect interpretation of the 1950 deed. If the majority cannot refer to the prior deeds, the majority admittedly cannot reach the conclusion that the interest in question is a floating one-half royalty interest as opposed to a fixed one-sixteenth royalty interest.

When interpreting an unambiguous deed, "[t]he primary duty of a court is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the 'four corners' rule." *Luckel*, 819 S.W.2d at 461. Thus, in ascertaining the intent of the parties in this case, we look only to the four corners of the 1950 deed. *See id.* We must examine and consider the entire writing, harmonizing and giving effect to all the provisions of the deed, even when different parts of the deed seem inconsistent or contradictory. *Hausser*, 345 S.W.3d at 466. We must assume the parties intended every clause to have some effect and interpret the deed so that no provision is rendered meaningless. *Hausser*, 345 S.W.3d at 466 (citing *Luckel*, 819 S.W.2d at 461). Each word and phrase should only be given its plain and grammatically correct meaning unless it would clearly defeat the parties' intent. *Hausser*, 345 S.W.3d at 466; *see Moon Royalty LLC v. Bolderick Partners*, 244 S.W.3d 391, 394 (Tex. App.—Eastland 2007, no pet.). Further, no provision of the deed should be struck unless a conflict exists which is irreconcilable and causes one part of the deed to destroy another part. *Hausser*, 345 S.W.3d at 466.

As noted above, all parties agree, as does the majority, that the 1950 deed is unambiguous. Applying the applicable four corners rule, I would hold the reserved royalty interest in favor of Prochaska is, contrary to the majority's conclusion, a fixed one-sixteenth royalty interest.

The royalty reservation language is mentioned in the following three clauses in the 1950 deed: "save and except" clause; "and provided" clause; and "intent" clause. The save and except clause states:

> SAVE AND EXCEPT, however, there is reserved unto George Prochaska, his heirs and assigns, one-half (1/2) of the one-eighth (1/8) royalty to be provided in any and all leases and for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof, same being equal to one-sixteenth (1/16th) of all oil, gas and other minerals of any nature, free and clear of all costs of production except taxes;

$$* \quad * \quad *$$

The "and provided" clause states:

> AND PROVIDED this reservation is burdened with paying the two outstanding mineral royalty reservations each of one-fourth (1/4) of one-eighth (1/8) royalty, one of which reservations is described in the deed from John Hancock Mutual Life Insurance Company to E.S. Joslin, now of record in Vol. 141, page 161, Deed Records of Karnes County, Texas, and the other reservation is described in the deed from E.S. Joslin, et ux to A.W. Powell, Jr., et al. now of record in Vol. 165, page 80 of the Deed Records of Karnes County, Texas; and this reservation shall only be effective to the extent that one or both of said outstanding reservations become terminated.

Finally, the "intent" clause states:

> It being the intent of the parties hereto that John W. Regmund and wife, Frances M. Regmund, as of the effective date hereof, shall be vested with and entitled to one-half (1/2) of one-eighth (1/8) royalty in and to all oil, gas and other minerals in on and/or under the property herein conveyed, and the reservation herein above recited in favor of the grantor herein, shall relate to and cover only the one-half (1/2) of one-eighth (1/8) royalty interest previously reserved in favor of John Hancock Mutual Life Insurance Company and Ennis Joslin, if as and when said interest in favor of said parties terminate.

These clauses can be summarized as follows: (1) the "save and except" clause reserves to Prochaska, as of the date of the deed, a royalty interest of one-half (1/2) of one-eighth (1/8th), that is, a one-sixteenth (1/16th) interest, in all oil, gas, and other minerals on the property in question;[3]

---

[3] The majority asserts, contrary to my position, that the reservation was ineffective until the reservations described in the John Hancock/Joslin and Joslin/Powell deeds expired. Majority Op. at _____. Under the plain language of the

(2) the "and provided" clause advises that Prochaska's one-sixteenth (1/16th) royalty reservation "is burdened with paying the two outstanding mineral royalty reservations," which are described in extrinsic deeds from the John Hancock Mutual Life Insurance Company to E.S. Joslin and from Joslin to A.W. Powell Jr., until they terminate; and (3) the "intent" clause merely clarifies that the Regmunds are entitled to the other half of the landowner's royalty that was not reserved by Prochaska, and Prochaska's reserved interest is burdened with paying the royalties relating to the reservations in the John Hancock/Joslin and Joslin/Powell deeds until they terminate.

Reading these clauses together, and harmonizing them as we must, it is clear the parties intended to convey to the Regmunds an unburdened one-half (1/2) of the usual one-eighth (1/8th) royalty interest in all oil, gas, and other minerals in the 735.85 acres in Karnes County.[4] Prochaska, under the "save and except" clause, reserved to himself the other one-half (1/2) of the landowner's one-eighth (1/8th) royalty interest. Prochaska's reservation was burdened, under the "and provided" clause, with paying the prior reservations described in the John Hancock/Joslin and Joslin/Powell deeds. The intent clause merely clarifies the parties' intent as expressed in the "save and except," and "and provided" clauses, and clarifies that the payment burden on Prochaska's reservation expires when the interests previously reserved in the John Hancock/Joslin and Joslin/Powell deeds terminate. Nowhere in the 1950 Deed are there any conflicting fractions or any confusion on what the reservations were intended to be, either in type or amount.

It is clear from the "four corners" of the unambiguous 1950 deed that the (1/2) of (1/8th) royalty interest reserved by Prochaska is a "fractional royalty" and remains constant regardless of

---

"save and except" and the "and provided," clauses, it is clear Prochaska was immediately entitled to the interest reserved in the "save and except clause. The "and provided" clause merely advises that Prochaska's interest is burdened, requiring him to pay the outstanding royalty reservations contained in the John Hancock/Joslin and Joslin/Powell deeds until they expire. And, those reservations expired in 1963.

[4] I agree with the Prochaskas that the royalty interest received by the Regmunds pursuant to the 1950 deed is an unburdened, fixed one-half (1/2) of one-eighth (1/8th), i.e., a fixed one-sixteenth interest.

the amount of royalty that might, in the future, be negotiated in an oil and gas lease. *See Tiller v. Tiller*, 685 S.W.2d 456, 458 (Tex. App.—Austin 1985, no writ) (defining "fractional royalty" as fixed interest.). To contend otherwise, i.e., to contend Prochaska received a one-half royalty interest in any future lease is to ignore the "of the one-eighth (1/8th)" and "same being equal to one-sixteenth (1/16th) of all oil, gas and other minerals" language.

The majority asserts the "one-eighth royalty" must be read with the surrounding descriptive language. I agree. However, to reach the conclusion that Prochaska reserved a one-half royalty interest, the majority asserts the "one-eighth royalty" in the save and except clause is modified by the "to be provided in any and all leases for oil, gas and other minerals now upon or hereafter given on said land, or any part thereof," and therefore describes a floating interest. However, the majority ignores the rest of the clause that provides clarity and sets out the exact meaning of the entire clause, that is the "same being equal to one-sixteenth (1/16th) of all oil, gas and other minerals of any nature, free and clear of all costs of production except taxes." The "same being equal to one-sixteenth (1/16th)" removes any doubt about the meaning: the save and except clause contains a 1/16th reservation to Prochaska of the land owner's royalty. To hold otherwise renders the "same being equal to one-sixteenth (1/16th) of all oil, gas and other minerals" meaningless, which we cannot do. *See Hausser*, 345 S.W.3d at 466 (referencing *Luckel*, 819 S.W.2d at 461).

With regard to the nature of the Prochaska reservation, looking only within the four corners of the deed, there is no indication the parties intended the 1/16th royalty interest to be a floating interest. Rather, it is clear the 1/16th royalty interest is a fixed or "fractional" royalty interest entitling Prochaska to "an absolute fraction of production—it is not affected by the amount of the landowner's royalty." *Luckel*, 819 S.W.2d at 464; *Watkins v. Slaughter*, 189 S.W.2d 699, 699–700 (Tex. 1945) (holding reservation of "a 1/16th in and to all of the oil, gas and other minerals"

is fixed royalty interest). The majority reaches its conclusion that the interest is floating only by consideration of the John Hancock/Joslin and Joslin/Powell deeds and such consideration is clearly prohibited under Texas law concerning interpretation of unambiguous deeds.

The clear, objective intent of the parties, based on harmonization of the applicable clauses in the 1950 deed, and without looking beyond the four corners, was to convey all of the land to the Regmunds, grant the Regmunds a fixed one-sixteenth royalty interest, and to reserve to Prochaska a fixed one-sixteenth royalty interest, burdened by prior interests until such interests terminate. Accordingly, pursuant to the terms of the 1950 deed as harmonized and without reference to outside documents, I would hold the royalty interest reserved by Prochaska is a simple one-half of one-eighth, i.e., a fixed 1/16th royalty interest.

### *Conclusion*

I believe looking beyond the four corners of the unambiguous 1950 deed in an attempt to determine the parties' intent is not permissible under Texas law. In the absence of such error, the 1950 deed clearly establishes the parties' intent to reserve to Prochaska a fixed one-sixteenth royalty interest. Accordingly, I dissent.

Marialyn Barnard, Justice