Judgment rendered November 20, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,953-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SPRINGBOK ROYALTY
PARTNERS, LLC

Plaintiff-Appellant

versus

SARAH WOOLLEY

Defendant-Appellee

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 637,080

Honorable Brady O'Callaghan, Judge

* * * * *

THOMAS, SOILEAU, JACKSON
& COLE, LLP
By: Steven E. Soileau

Counsel for Appellant,
Springbok Royalty
Partners, LLC, and for
Third Party Appellee,
Michael Heldoorn

MILLING BENSON WOODWARD, LLP
By: C. Randall Loewen
    Sarah A. Fisher

Counsel for Appellee

* * * * *

Before PITMAN, COX, and THOMPSON, JJ.

**PITMAN, C. J.**

Plaintiff/Appellant Springbok Royalty Partners, LLC ("Springbok") appeals a summary judgment granted in favor of Defendant/Appellee Sarah Woolley ("Woolley") finding that a letter agreement ("LOI" for letter of intent) was unenforceable for want of consideration as required by Texas law and due to its ambiguities. Springbok's cross-motion seeking specific performance was denied. For the following reasons, we reverse the summary judgment granted in Woolley's favor and remand for further consideration. We affirm the denial of Springbok's summary judgment.

## FACTS

Springbok is a Delaware limited liability corporation with its principal place of business located in Dallas, Texas. It is also licensed to do business in Louisiana and has its principal business office in Baton Rouge. Springbok entered into an LOI with Woolley, a resident of New York, who owns land in Caddo Parish, Louisiana. In the agreement, she allegedly agreed to sell to Springbok her mineral interests from properties located in Sections 8, 16 and 17 in Township 16 North, Range 15 West, in Caddo Parish, comprising approximately 238 mineral acres.

Paragraph 1, Description of the Offer, in the LOI dated March 9, 2022, states that Springbok submitted an initial cash offer of $2.3 million (the "purchase price") in "consideration for a Mineral Deed . . . dated effective as of 03/01/2022" for all of the right, title, interest and estate held and/or owned by Woolley in and to 238.12 net mineral acres underlying the land described in Exhibit A, including all royalties on production, executive rights to lease and any and all of her rights relating to the ownership of the

minerals. The description of the offer includes a clause that gives Springbok a reasonable time to examine the title to the minerals.

Paragraph 2, Acceptance and Termination of Offer, required that Woolley sign and return an executed counterpart to the LOI before March 11, 2022, or the offer would automatically terminate and be void.

Paragraph 3, Occurrence of Closing, states as follows:

a**. In the event that you do accept this Offer by executing and delivering to Offeror a duly executed counterpart to this Letter prior to the Expiration Time in accordance with Section 2** prior to the earlier to occur of (i) the Expiration Time and (ii) the withdrawal or cancellation of this Offer by Offeror pursuant to Section 2, then, for a period of 60 Business Days (as defined below) beginning on the day after the day on which Offeror receives such executed counterpart to this Letter (such period, the "Pre-Closing Period"), **(A) Offeror shall have the right to acquire all of your right, title, interest and estate in and to the Minerals for the Purchase Price (subject to reduction if, and to the extent, provided in this Letter) and (B) this Letter shall form a binding agreement and you shall be deemed to have received good, valuable and sufficient consideration for your execution and delivery of your counterpart to this Letter and your performance of your obligations hereunder (and you shall not take a position to the contrary).** In order to exercise such purchase right, Offeror shall deliver written notice to you prior to the expiration of the Pre-Closing Period stating that Offeror is prepared to close the Transactions (such notice, a "Closing Notice"). Notwithstanding anything to the contrary in this Letter or otherwise, in the event that, prior to the expiration of the Pre-Closing Period, (x) Offeror does not deliver a Closing Notice to you or (y) Offeror delivers written notice to you stating that Offeror has determined that the state of your title in and/or to any of the Minerals or any other matters related to the Minerals or the Transactions are not acceptable to Offeror, then this Letter and the Offer (and the respective rights and obligations of Offeror and you hereunder and with respect thereto) shall automatically terminate and be void and of no further force or effect without any further action of Offeror or you. (Emphasis added.)

2

Other pertinent paragraphs of the agreement include Paragraphs 8 and 9 which state as follows:

> 8. Amendments: Time is of the Essence; Governing Law, Counterparts: This letter may be amended, modified or supplemented only pursuant to a written instrument signed by the parties hereto. This Letter shall be governed by, and construed in accordance with the laws of the State of Texas without regard to conflicts of law rules. Time is of the essence to both you and Offeror in the performance of this Letter. To the extent either party seeks to enforce this Letter in a legal proceeding, each side is responsible for its own attorney's fees and costs of court, except if Offeror is the prevailing party, then Offeror shall be entitled to recover its reasonable attorney's fees and costs. This Letter may be executed and delivered (including by facsimile or other electronic transmission) in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute on (*sic*) and the same instrument.

> 9. Execution of Mineral Deed. IN THE EVENT THAT YOU CHOOSE TO EXECUTE THIS LETTER AND SUBSEQUENTLY DELIVER THE MINERAL DEED PURSUANT TO AND IN ACCORDANCE WITH THIS LETTER, YOU WILL SELL ALL OF YOUR RIGHT, TITLE INTEREST AND ESTATE IN AND TO THE MINERAL INTERESTS IN THE PROPERTY(IES) DESCRIBED IN THE MINERAL DEED.

Woolley executed the LOI on March 11, 2022. Springbok performed its due diligence and provided a closing notice to Woolley. It also allowed a time period for Woolley's attorney to examine the deed and make suggestions as to certain modifications, including protection for a timber farm on the surface and an amendment as to price. However, when Springbok would not negotiate the starting date for the sale of the minerals from March 1, 2022, to May 1, 2022, Woolley refused to sell and transfer her mineral rights. In the interim, she had been offered more money for her mineral rights from another company.

In May 2022, Springbok filed suit against Woolley alleging that the LOI is binding, valid and enforceable; that the company had performed all the conditions precedent to recover under the agreement; and that Woolley had breached the agreement. It sought specific performance of the transfer of the minerals and damages for the losses it sustained as a result of her failure to sell, including delay damages and any lost mineral production revenue to which it would have been entitled had the deed been timely executed, together with legal interest and costs.

On August 1, 2022, Woolley answered, asserted affirmative defenses, a reconventional demand and a third party demand. Her affirmative defenses were that she never entered into a binding agreement for the sale of her family mineral interests because the only document she signed was an LOI, which she claims is not binding, and that none of the documents relied upon by Springbok were attached to the petition. She also alleged that there had been no meeting of the minds and that there was a lack of required consideration in the agreement for the transfer of the minerals. She further alleged there was a lack of the required mutuality of obligations, i.e., there was no agreement for the transfer of the mineral interests as contemplated by the mineral deed which had not been executed by the parties. She alleged that the LOI could not be binding because Springbok failed to comply with its terms and conditions, including, but not limited to, the failure to deliver the "closing notice."

In addition to those defenses, Woolley also asserted fraud and misrepresentation, error or mistake. She alleged that Michael Heldoorn, vice president of Springbok Business Development, should be found liable for fraud and misrepresentation against her. She also alleged equitable estoppel

4

should be used to prevent Springbok from asserting claims to enforce the agreement because it had expressed to her that she was not bound to sell her mineral interests and that she would be allowed the assistance of counsel in the transfer of minerals. She claims she relied on these assertions.

Her reconventional demand and third party demand against Springbok and Michael Heldoorn alleged that she is a co-owner of family property in Louisiana that is already being mined for minerals and from which, "prior to the subject intentional, wrongful and malicious actions of Springbok," she received her share of the royalties attributable to the Woolley Minerals. She alleged that in early 2022, Springbok, through Heldoorn, contacted her regarding the potential for a sale of the minerals and that she was interested in considering the offer as long as a timber farm on the property would remain undisturbed. She claimed that the LOI was sent to her via DocuSign, that she had no input as to its terms and that it would expire within 46 hours if she did not sign it.

Woolley alleged that because she was leaving the country the day the agreement was sent to her, she had a conversation with Springbok and by text stated, "If I submit the signed intent today, I will need time to find a lawyer to review [the] real contract after I get back to [the] US. What is your company time frame?"

Woolley further alleged that Springbok's communications led her to believe that the LOI was not the final agreement. She stated that Heldoorn sent her a text confirming that the letter was not a "real contract" and elaborated, "After you sign the contract, we will then send you the Mineral Deed for your attorney to review. After your attorney has reviewed, then we will close. Typical timeframe is a few weeks."

Woolley stated she relied on the communications with Springbok that the LOI was a nonbinding agreement which would allow the parties to further pursue the potential for a mutually agreeable purchase and sale of her mineral interests. In fact, her attorney took part in further negotiations regarding the proposed Mineral Deed thereby lending more credence to her assumption that the LOI was not the document which bound her to this sale. When she did receive the proposed mineral deed, it did not contain the assurances she sought concerning the timber farm. She alleged she did not receive the "closing notice" Springbok was to supply, which she claims was not for the LOI but, instead, was meant to apply to the mineral deed.

Woolley made other claims of damages, including that there is a cloud on the title of her minerals. She alleged fraud and misrepresentation and claimed she is entitled to recovery of damages, costs and attorney fees. She also alleged she had a claim against Springbok for unfair trade practices pursuant to La. R.S. 51:1401, et seq. (the Louisiana Unfair Trade Practices Act or "LUTPA"), entitling her to treble damages, payment of costs, attorney fees and interest thereon.

On August 5, 2022, Woolley filed a motion for partial summary judgment and argued that there were no genuine issues of material fact and that she was entitled to judgment as a matter of law dismissing the claims of Springbok against her. She prayed that her reconventional and third party demands be maintained.

Springbok and Heldoorn responded to the motion for partial summary judgment and also filed peremptory exceptions of no cause of action, claiming Woolley had not pled facts sufficient to state a cause of action for fraud under LUTPA.

6

Although these pleadings were set for hearing, the trial court deferred ruling on them until December 14, 2022.

On December 14, 2022, the trial court denied Woolley's motion for partial summary judgment, citing *Springbok Royalty Partners, LLC v. Cook*, 54,788 (La. App. 2 Cir. 11/6/22), 351 So.3d 850, *writ denied*, 22-01832 (La. 2/14/23), 355 So. 3d 614. It also denied Springbok's exception of no cause of action.

In February 2023, Springbok filed its own motion for summary judgment seeking specific performance of the LOI, and Springbok and Heldoorn filed a joint motion for summary judgment seeking to dismiss Woolley's reconventional and third party demands for fraud and claims under LUTPA. They argued Heldoorn never made the allegedly fraudulent statements that Woolley claimed had been made and that there had been no misrepresentation of material facts made with the intent to deceive and cause justifiable reliance with resultant injury. Further, they claimed that the range of prohibited practices under LUTPA is extremely narrow and covers only fraud, misrepresentation and similar conduct. They argued that none of their actions were the egregious or immoral conduct covered by LUTPA and that the demands should be dismissed.

On May 11, 2023, Woolley filed a second motion for summary judgment seeking dismissal of Springbok's claims. She asserted that the LOI she signed is governed by Texas law; and, thus, it is not a binding contract for want of consideration. She argued that consideration is not valid if it consists entirely of illusory promises, which is how she interpreted Springbok's LOI. She also claimed that the trial court did not have all the evidence before it with respect to the *Cook* decision and that because Texas

law was not even considered in that case, it is not dispositive of contract interpretation in the instant case. She argued that she was allowed the right to choose whether to finalize the deal by signing a mineral deed, which she ultimately decided not to do. She points out that Springbok created the LOI and that, if ambiguous, it should be construed against the party that drafted it. She requested that her hearing on the motion be held the same date as the pending joint motion for summary judgment filed by Springbok and Heldoorn.

Springbok and Heldoorn filed oppositions to Woolley's motions for summary judgment reiterating their arguments that the LOI for sale of the minerals was enforceable and negating the claims for fraud and LUTPA.

On June 20, 2023, the trial court heard Woolley's motion for summary judgment and the cross-motions for summary judgment filed by Springbok and Heldoorn in response to Woolley's motion and the motion on the reconventional and third party demands.

The trial court issued a judgment on July 19, 2023, finding that it was undisputed that the choice of law provision expressed in the LOI was Texas law and that Texas law would be used in its interpretation and enforcement. It found that "neither party appears to challenge the validity of the choice of law provision" and that interpretation of the LOI was governed by Texas law.

The trial court noted that *Cook* was decided under Louisiana law and addressed the issue of whether unilateral error sufficient to vitiate consent was present and whether there was any evidence of fraud. It did not question whether Texas law applied or the interpretation of the LOI under

8

Texas law. For these reasons, the trial court found that it was not bound by the ruling in *Cook*.

The trial court addressed whether a genuine issue of material fact existed as to the validity of the LOI under Texas law. It found the LOI did not meet the Texas law requirement of consideration; and, thus, it failed to be an enforceable option contract for lack of consideration.

The trial court also found that although the LOI states that Woolley had received good, valuable and sufficient consideration, it does not describe that consideration. It found the LOI failed to state sufficient consideration and that there were no genuine issues of material fact regarding the issue; thus, it failed to constitute a binding contract under Texas law.

The trial court also noted that the LOI would need to comply with Texas law to be enforced as written. It found that Paragraph 9 of the LOI contradicted the earlier provision of Paragraph 3 (occurrence of closing) and created a grammatical ambiguity that the vendor of the mineral rights retains a choice under the agreement, even after the letter is signed. The court stated:

> As the court reads it, "AND" is a conjunction between the verbs "execute" and "deliver," making each of them an infinitive with the preposition "to" and both therefore subject to the verb "choose."

It found its interpretation was directly at odds with Springbok's assertion that signing the letter created an obligation to deliver and sell. It stated that it found the plain language of the sentence "in no way suggests that delivery of the deed is mandatory, nor does it suggest that such delivery is a necessary consequence of the choice to execute." It stated that the

9

ambiguity provided a second independent basis for finding the agreement unenforceable.

The trial court considered Woolley's reconventional and third party demands for fraud and violation of LUTPA and stated that they depended on the LOI being enforceable. Therefore, it found that the issues were moot.

Woolley's summary judgment was granted against Springbok, and the LOI between the parties was declared unenforceable as a matter of law. Springbok and Heldoorn's joint motion for summary judgment was denied as moot.

Springbok appeals the grant of Woolley's summary judgment finding the LOI to be unenforceable and dismissing its case against her. It also appeals the denial of its summary judgment seeking specific performance.

**DISCUSSION**

Springbok argues that the trial court erred in failing to consider the enforceability of the LOI pursuant to Louisiana law and that it is enforceable under both Texas and Louisiana law. It asserts that Woolley acknowledged in writing that she received good and valuable consideration and forfeited her right to claim otherwise. For those reasons, it contends that the trial court erred in finding that pursuant to Texas law, the LOI must recite purported consideration to be enforceable. Next, it argues that the trial court erred by interpreting the sections and clauses of the LOI in isolation and creating ambiguities, which this court had not found to exist in the identical LOI in *Cook*, *supra*.

Springbok contends that while district courts are to apply the law expressly chosen by the parties in their agreement, there is an important caveat allowing a departure from that instruction where the law contravenes

10

public policy of the state whose law would otherwise be applicable. In this case, it claims Louisiana law should be considered the applicable law.

Springbok claims that because Louisiana law applies, the issue involving "consideration" is irrelevant. Pursuant to the LOI, it was required to ascertain whether Woolley's title was good; and when that due diligence process began, Springbok supplied actual consideration.

Springbok also argues that the *Cook* opinion addressed an identical option to buy minerals and found that its LOI was unambiguous and was enforceable. It contends that if Woolley chose to sign the LOI because she thought it to be nonbinding, simply a reading of the unambiguous  was necessary to resolve that error. It asserts that Woolley can point to no communication from it or Heldoorn where they represented to her that the LOI was nonbinding or that she reserved to herself the choice to deliver a mineral deed after making her choice to sign the LOI.

Woolley argues she is under no obligation to transfer her mineral interest to Springbok because the trial court was correct in finding that Texas law applies to the LOI and requires that the agreement be supported by the requisite consideration and/or mutuality of obligations. Further, she argues that the provisions of the LOI were drafted by Springbok and require the negotiation of a mineral deed to have a binding agreement. Since no mineral deed materialized, there is no obligation. She contends that the trial court properly found that the issue in the case at bar is not controlled by this court's ruling in the *Cook* case. She claims there are many distinctions, both legal and factual, which differentiate the two cases.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of

11

whether summary judgment is appropriate. *Peironnet v. Matador Res. Co*., 12-2292 (La. 6/28/13), 144 So. 3d 791*; Culberson v. Wells Fargo USA Holdings Inc*., 54,545 (La. App. 2 Cir. 6/29/22), 342 So. 3d 451, *writ denied*, 22-01159 (La. 11/1/22), 349 So. 3d 3, *cert. denied*, 143 S. Ct. 1058, 215 L. Ed. 2d 281 (2023). A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. La. C.C.P. art. 966(A)(1); *Culberson*, *supra*. The procedure is favored and shall be construed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).

A motion for summary judgment shall be granted if the motion, memorandum and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success or determines the outcome of the legal dispute. *Culberson*, *supra*. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id*. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence. *Id*. The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense but rather to point out to the court the absence of factual support for one or more elements essential to the adverse

party's claim, action or defense. *Id.* The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories or by further affidavits. *Id.*

When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). If he does not so respond, summary judgment, if appropriate, shall be rendered against him. *Id.*

When a contract can be construed from the four corners of the instrument, interpretation of the contract presents a question of law that can be decided on summary judgment. *City of Ruston v. Womack & Sons Constr. Grp., Inc.*, 55,328 (La. App. 2 Cir. 11/15/23), 374 So. 3d 311, *writ denied*, 24-00086 (La. 3/5/24), 380 So. 3d 571.

The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045; *Powell v. Derr*, 48,405 (La. App. 2 Cir. 9/25/13), 125 So. 3d 501, *writ denied*, 13-2911 (La. 2/21/14), 134 So. 3d 584. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. The fact that one party creates a

13

dispute about the meaning of a contractual provision does not render the provision ambiguous. *Powell*, *supra*. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.

A contract is ambiguous when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions or the parties' intent cannot be ascertained from the language used. *Campbell v. Melton*, 01-2578 (La. 5/14/02), 817 So. 2d 69. A provision is not considered ambiguous merely because one party creates a dispute about it. *Id.* The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of new contract when the terms express with sufficient clearness the parties' intent. *Id.*

This court has had an earlier opportunity to interpret a mineral deed under Texas law and provides insight into how Texas procedure applies to summary judgment and contractual interpretation. *See Chesapeake Operating, L.L.C. v. Columbine II Ltd. P'ship*, 55,017 (La. App. 2 Cir. 5/10/23), 361 So. 3d 1239, where we found that pursuant to the forum selection provision in the contract, Texas law applied to the matter, *citing Goodrich Petroleum Co., LLC v. Columbine II, Ltd. P'ship*, 53,820 (La. App. 2 Cir. 4/14/21), 318 So. 3d 1062, *writ denied*, 21-00680 (La. 9/27/21), 324 So.3d 103.

Following is an excerpt from *Chesapeake Operating, LLC*, discussing the application of Texas law to summary judgment and contract review.

14

We review a trial court's decision granting summary judgment *de novo. Posse Energy, Ltd. v. Parsley Energy, LP*, 632 S.W.3d 677 (Tex. App. 2021), *review denied* (Feb. 18, 2022). To prevail on a traditional motion for summary judgment, the movant must show there are no genuine issues of material fact and that movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a; *Posse Energy, Ltd., supra*. After the movant satisfies his burden, the burden shifts to the nonmovant to provide evidence which raises a genuine issue of material fact and thus avoid summary judgment. *Id.*; *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W. 3d 507 (Tex. 2014). When cross-motions for summary judgment are filed, a court of appeal considers each motion and renders the judgment the trial court should have reached. *Posse Energy, Ltd., supra; Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W. 3d 880 (Tex. 2001).

Contracts are also reviewed under a *de novo* standard of review. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W. 3d 471 (Tex. 2019). A contract may be either ambiguous or unambiguous, and this determination is a question of law for the court. *Hausser v. Cuellar*, 345 S.W. 3d 462 (Tex. App. 2011). In construing a written contract, our primary concern is to determine the true intent of the parties as expressed by the plain language of the agreement. *N. Shore Energy, L.L.C. v. Harkins*, 501 S.W. 3d 598 (Tex. 2016). We construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served, and avoiding unreasonable constructions when possible and proper. *Id.*; *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W. 3d 296 (Tex. 2015). To achieve this objective, courts must examine and consider the entire writing in an effort to harmonize and give effects to all the provisions of the contract so that none will be rendered meaningless. *Posse Energy, Ltd, supra; J.M. Davidson, Inc. v. Webster*, 128 S.W. 3d 223 (Tex. 2003). No single provision taken alone is given controlling effect; rather, each must be considered in the context of the instrument as a whole. *Plains Expl., supra; J.M. Davidson, Inc., supra*. Additionally, words are given their plain, common, or generally accepted meaning unless the contract shows that the parties used words in a technical or different sense. *Plains Expl., supra*.

A deed is unambiguous when it is so worded that it can be given a certain or definite legal meaning or interpretation. *Coker v. Coker*, 650 S.W. 2d 391 (Tex. 1983). . . . **But if the contract contains two or more reasonable interpretations, the contract is ambiguous, creating a fact issue as to the parties' intent.** *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W. 3d 471 (Tex. 2019). An ambiguity, however, does not arise "merely because parties to an agreement proffer

15

different interpretations of a term." *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W. 3d 96 (Tex. 1999). For an ambiguity to exist, both interpretations must be reasonable. *Columbia Gas Transmission Corp v. New Ulm Gas, Ltd.*, 940 S.W. 2d 587 (Tex. 1996). (Emphasis added.)

In the case at bar, this court has reviewed the summary judgment *de novo*, using the same criteria that governed the trial court's consideration of whether summary judgment was appropriate. We note that there are differences in the issues and evidence presented in the case at bar and the *Cook* case, even though the LOI was identical in both cases.

Even though the trial court decided that Texas law applies to this case pursuant to the LOI, there appears to be little difference between Texas law and Louisiana law on the matters of summary judgment and contractual interpretation. Under both states' laws, the question remains, are there any genuine issues of material fact left to be decided and whether the mover is entitled to judgment as a matter of law.

We find there are many genuine issues of material fact left to be decided and that the mover failed to meet her burden of proof that summary judgment is warranted. If it is determined that Texas law applies to this case, and the issue of consideration arises, both Springbok and Woolley should be allowed the chance to prove whether or not it was provided. Further, because a provision in a contract is not considered ambiguous merely because one party creates a dispute about it, and Woolley is the only party asserting the ambiguity, further proof is necessary regarding the alleged ambiguity. If the contract is ambiguous, fact issues arise as to the meaning of the language used. As the record stands, Springbok still asserts the LOI is binding, and Woolley claims it is not. There are many issues of material fact remaining which make this case unfit for summary judgment.

16

For the foregoing reasons, the assignments of error have merit with regard to the summary judgment granted in Woolley's favor, and this matter is remanded for further consideration of all issues before the trial court.

Because Springbok's summary judgment was denied by the trial court and this case is remanded for further consideration, at which time either party may obtain relief, we affirm the denial of summary judgment in Springbok's favor.

## CONCLUSION

For the reasons stated above, the judgment of the trial court granting summary judgment in favor of Sarah Woolley and against Springbok Royalty Partners, LLC, is reversed and the matter is remanded. Genuine issues of material fact remain which preclude summary judgment in her favor. The judgment of the trial court denying summary judgment in favor of Springbok Royalty Partners, LLC is affirmed. Costs of this appeal are assessed equally to Sarah Woolley and Springbok Royalty Partners, LLC.

**REVERSED IN PART; AFFIRMED IN PART; REMANDED.**